UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMAL VAUGHN                                    CIVIL ACTION

VERSUS                                          NO. 18-7735

AMERICAN COMMERCIAL BARGE                       SECTION: "J"
LINE, LLC

## ORDER AND REASONS

Before the Court are two motions filed by American Commercial Barge Line,
LLC ("ACBL"): a *Motion for Partial Summary Judgment on Maintenance and Cure*
**(Rec. Doc. 34)** and a *Motion for Partial Summary Judgment on Non-Pecuniary
Damages* **(Rec. Doc. 35).** Vaughn filed oppositions to the motions (Rec. Docs. 40, 42),
and ACBL filed a reply (Rec. Doc. 48). Having considered the motions and legal
memoranda, the record, and the applicable law, the Court finds that the motions
should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of an incident that took place on January 19, 2018 aboard
the M/V Explorer, a vessel owned and operated by ACBL. The vessel was travelling
from near Baton Rouge to Harahan for repairs and struck a second vessel moored at
a dock. Vaughn Vaughn, a deckhand employed by ACBL, was working in the galley
at the time and allegedly sustained injuries to his neck, back, and right shoulder
because of the allision.

Vaughn filed suit against ACBL on August 15, 2018, claiming (1) Jones Act
negligence, (2) unseaworthiness, and (3) maintenance and cure. Vaughn requested

damages for pain and suffering, mental anguish and emotional distress, loss of enjoyment of life, lost wages and impairment of earning capacity, maintenance and cure, medical bills, and punitive damages.

On February 11, 2020, the Court stayed the case because of ACBL's notice of bankruptcy. On consent motion to lift the stay, the Court lifted the stay on June 15, 2022 because ACBL was no longer in bankruptcy. On April 12, 2023, ACBL filed the instant motions for partial summary judgment, seeking to dismiss Vaughn's claims for non-pecuniary damages, maintenance and cure, and punitive damages and/or attorneys' fees.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be

satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## DISCUSSION

### 1. Maintenance and Cure

ACBL moves for partial summary judgment dismissal of Vaughn's claims for maintenance and cure, arguing that Vaughn reached maximum medical improvement ("MMI") for all of his injuries. (Rec. Doc. 34-1, at 1). In opposition, Vaughn contends that he has not reached MMI and that ACBL has not paid or reimbursed $36,186.88 of his outstanding medical bills. (Rec. Doc. 40, at 1).

After the allision, Vaughn visited a nearby clinic, complaining of pain in his neck, back, and right shoulder, as well as a headache. (Rec. Doc. 34-1, at 2). Thereafter, Vaughn began treating with Dr. Gregor J. Hoffman, an orthopedic surgeon in New Orleans, for his right shoulder. *Id.* at 3. Dr. Hoffman performed two

arthroscopic surgeries in 2018 and 2019, and on December 2, 2019, Dr. Hoffman signed off on Vaughn at MMI with respect to his right shoulder. *Id.*; (Rec. Doc. 34-2, at 4).

In October 2018, Dr. Andrew G Todd, an orthopedic surgeon, began treating Vaughn's neck and back complaints. *Id.* Dr. Todd performed a disc replacement surgery on March 25, 2021 as well as a rhizotomy and medial branch blocks. *Id.* Vaughn also attended physical therapy and received epidural steroid shot injections for his lumbar spine. *Id.* On August 10, 2022, Dr. Todd responded to a letter from ACBL asking whether Vaughn had reached MMI, stating,

> In regard to his cervical spine, I believe he most likely has. In regard to his lumbar spine, he continues to have ongoing low back pain due to his herniated disk. . . He continues to require intermittent epidural steroid injections. I believe he will require those going forward. So I guess you could say he has reached nonsurgical Maximum Medical Improvement, but he will continue to require treatment going forward.

(Rec. Doc. 34-2, at 6). In response to ACBL's follow-up letter asking whether the epidural steroid injections for the lumber spine are "meant to address ongoing complaints of pain," Dr. Todd answered, "Yes." *Id.* at 8.

ACBL paid Vaughn maintenance from the date of the accident through present, at a rate of $30.00 per day, for a total of $55,320 as of the date ACBL filed its motion. (Rec. Doc. 34-1, at 5). ACBL also paid for Plaintiff's three surgeries, several epidural steroid injections, and physical therapy, for a total of $149,813.56 in curative medical expenses. (Rec. Doc. 34-2, at 2).

ACBL argues that, because Vaughn has been placed at MMI for his injuries and because ACBL has satisfied its maintenance and cure obligations, it is entitled to dismissal of Vaughn's claims for maintenance and cure. Vaughn argues that, because Dr. Todd uses the phrase "non-surgical maximum medical improvement" regarding his lumbar spine, that a question of fact exists on whether he has reached MMI. (Rec. Doc. 40, at 3).

Under the general maritime law, a seaman like Vaughn is entitled to maintenance and cure from his employer for injuries incurred or aggravated in the service of the vessel. *The Osceola*, 189 U.S. 158, 175 (1903). Maintenance is a per diem living allowance for food and lodging comparable to what the seaman is entitled to while at sea; cure is payment of medical expenses incurred in treating the seaman's injury or illness. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528 (1938); *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979). The ship owner's duty to pay maintenance and cure is broad. *Vella v. Ford Motor Co.*, 421 U.S. 1, 4 (1975). The maintenance and cure duty must be liberally interpreted for the benefit and protection of the seaman. *Vaughan v. Atkinson*, 369 U.S. 527, 531–32 (1962). Any ambiguity or doubt related to maintenance and cure must be resolved in favor of the seaman. *Id.* at 532; *Barto v. Shore Construction, LLC*, 801 F.3d 465, 476 (5th Cir. 2015).

The ship owner's duty to pay maintenance and cure continues until the seaman reaches the point of maximum medical recovery, also known as maximum medical improvement (MMI). *Farrell v. United States*, 336 U.S. 511, 519–20 (1949). The point

of MMI is a medical determination, and not a legal one. *Breese v. AWI, Inc.*, 823 F.2d 100, 104–05 (5th Cir. 1987). Any ambiguities or doubts regarding entitlement to cure or the date of maximum medical improvement must be resolved in favor of the seaman. *Caulfield v. AC&D Marine, Inc.*, 633 F.2d 1129, 1132 (5th Cir. 1981). MMI is reached when the seaman recovers from the injury, the condition permanently stabilizes, or the condition cannot be improved further. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1359 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995). Merely palliative treatment alone, rather than curative treatment, is "insufficient to demonstrate an entitlement to continued maintenance and cure." *Alario v. Offshore Serv. Vessels, L.L.C.*, 477 F. App'x 186, 188 (5th Cir. 2012).

The ship owner bears the obligation to investigate a seaman's maintenance and cure claim and examine all medical evidence in determining whether maintenance and cure is owed. *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985). After a seaman has proved his initial entitlement to maintenance and cure, the burden shifts to the ship owner to prove that maximum cure has been reached. Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:33 (6th ed.), Westlaw (database updated Dec. 2022). If the ship owner unilaterally decides to stop paying maintenance and cure, and the seaman reasserts his right by bringing an action against the ship owner, the ship owner meets his burden of proof only by providing unequivocal evidence that the seaman has reached maximum medical cure. *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990).

In this case, as to Vaughn's right shoulder and cervical spine, his treating physicians determined that he reached MMI. Vaughn has not contested that finding in his opposition memorandum. However, as to Vaughn's lumbar spine injuries, ACBL contends that Dr. Todd rendered a qualified medical opinion that Vaughn has reached MMI, and that any future treatment for his lumbar spine is merely palliative. (Rec. Doc. 48). In opposition, Vaughn points to Dr. Todd's use of the phrase "nonsurgical Maximum Medical Improvement" and claims that "his condition may be improved by surgery, but he has not elected to have that surgery at this time." (Rec. Doc. 40, at 3). Considering that all ambiguity or doubts as to whether a seaman is entitled to maintenance and cure must be resolved in the seaman's favor, the communications from Dr. Todd demonstrate that an issue of fact remains regarding whether Vaughn has reached MMI and whether further treatment is curative. Accordingly, the Court finds that ACBL has not carried its burden to provide unequivocal evidence that Vaughn has reached maximum medical cure.

### 2. Punitive Damages

ACBL next seeks to dismiss Vaughn's claims for punitive damages and/or attorneys' fees for failure to pay maintenance and cure. (Rec. Doc. 34-1, at 6). Vaughn contends that $36,186.88 in medical expenses remain outstanding (Rec. Doc. 40, at 1). In reply, ACBL notes that Vaughn's evidence of those medical expenses is insufficient at summary judgment, because he has "simply submitted an itemized summary of allegedly incurred medical expenses without any additional documentation, such as medical invoices or billing records." (Rec. Doc. 48, at 5). In its

motion, ACBL also confirms its obligation to pay for curative medical expenses, and it states that the failure to pay the amount alleged is administrative error, rather than the result of bad faith or an arbitrary and capricious decision. *Id.*

Absent an unequivocal justification to terminate a seaman's maintenance and cure because a seaman has reached MMI, a ship owner may subject itself to liability for punitive damages and attorney's fees if it terminates benefits nonetheless. *Rowan v. Chem Carrier Towing, LLC*, No. 12–712, 2015 WL 2097572, at *6 (E.D. La. May 5, 2015). "It is well-settled that a ship-owner who arbitrarily and capriciously denies maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees." *Breese v. AWI, Inc.*, 823 F.2d 100, 103 (5th Cir. 1987) (internal quotations omitted). "No bright line separates the type of conduct that properly grounds an award of punitive damages—a ship-owner's willful and callous default in its duty of investigating claims and providing maintenance and cure—from the type of conduct that does not support a punitive damages award." *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir. 1984). However, examples of employer behavior that could merit punitive damages have included (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; and (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically. *Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985). Further, the "the willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith." *Harper*, 741 F.2d at 90.

As an initial matter, the Court notes that it is unclear whether Vaughn's claim for punitive damages is based on: (1) ACBL's decision to terminate maintenance and cure, or (2) ACBL's failure to pay the outstanding $36,186.88 in medical expenses. Considering the Court's finding that ACBL has not carried its burden to terminate maintenance and cure as well as the requirement that the Court resolve ambiguities in the seaman's favor, the Court also finds that Vaughn's punitive damages claim can be resolved at trial.

### 3. Non-pecuniary Damages

ACBL also seeks summary judgment dismissing Vaughn's claims for non-pecuniary damages, including damages for mental anguish and emotional distress and loss of enjoyment of life. (Rec. Doc. 35-1, at 6). Vaughn concedes that non-pecuniary damages are not recoverable under the Jones Act and general maritime law. (Rec. Doc. 42, at 1). It is well-established that nonpecuniary damages, such as loss of society, are not available to a Jones Act seaman in an action against his employer. *See Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990); *Murray v. Anthony J. Bertucci Const. Co.*, 958 F.2d 127 (5th Cir. 1992); *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2310 (2015); *Wade v. Clemco Indus. Corp.*, No. CV 16-502, 2017 WL 434425 (E.D. La. Feb. 1, 2017); *In re Adriatic Marine, LLC*, No. CV 20-1488, 2022 WL 1239950 (E.D. La. Apr. 27, 2022).

However, Vaughn argues that his requested damages for past and future pain and suffering are pecuniary damages and therefore recoverable in this matter. (Rec. Doc. 42, at 1). In response, ACBL cites to this Court's opinion in *In re Adriatic Marine*

for the proposition that summary judgment dismissal is appropriate for a seaman's claims for "non-pecuniary damages such as loss of enjoyment of life, mental anguish, and other non-economic damages arising from an alleged personal injury." (Rec. Doc. 35-1, at 6) (citing No. CV 20-1488, 2022 WL 1239950 (E.D. La. Apr. 27, 2022)). In *Adriatic Marine*, this Court examined Supreme Court, Fifth Circuit, and Eastern District of Louisiana precedent to find that the plaintiff was not permitted to recover non-pecuniary damages. *In re Adriatic Marine, LLC*, No. CV 20-1488, 2022 WL 1239950 (E.D. La. Apr. 27, 2022). The Court did not address whether pain and suffering is non-pecuniary and thus non-recoverable. *Id.*

Vaughn contends that pain and suffering damages are pecuniary damages delineated specifically by Judge Fallon in *Dunn v. Marquette Transportation*. (Rec. Doc. 42, at 2). In *Dunn*, Judge Fallon found that the Vaughn was entitled to an award of $100,000 for past pain and suffering and $400,000 for future pain and suffering, and that award was consistent with other cases involving similar injuries. *Dunn v. Marquette Transp. Co., LLC*, No. CV 16-13545, 2017 WL 3887521, at *12 (E.D. La. Sept. 6, 2017) (citing, *inter alia*, *Graham v. Offshore Specialty Fabricators, Inc.*, 37 So.3d 1002, 1019 (La. App. 1 Cir. 2010); *Derouen v. Mallard Bay Drilling, L.L.C.*, 808 So.2d 694, 707 (La. App. 1 Cir. 6/22/01)).

The Court is aware of no controlling case precluding a Jones Act seaman from recovering damages for pain and suffering on the basis that pain and suffering damages are non-pecuniary. In fact, the Fifth Circuit classifies pain and suffering damages claims as recoverable. *See McBride v. Estis Well Serv., L.L.C.*, 853 F.3d 777,

781 (5th Cir. 2017) ("Under the Jones Act, a Vaughn can recover damages for pre-death pain and suffering."); *Knight v. Kirby Offshore Marine Pac., L.L.C.*, 983 F.3d 172, 180 (5th Cir. 2020) ("General damages are available for pain and suffering and their negative impact on one's normal life routines."); *see also Miles*, 498 U.S. at 22 (allowing the Vaughn's estate to recover for the pre-death pain and suffering of the decedent seaman). Further, "an injured seaman is also entitled to recover damages for his physical injury including pain, suffering, mental anguish, physical discomfort, and inconvenience and for the mental and physical effects of the injury on his ability to engage in those activities which normally contribute to the enjoyment of life." Schoenbaum, *Admiralty and Maritime Law* § 6:18; *see also* Pattern Jury Instructions (Civil Cases) § 4.8, at 50 (2016) ("Compensatory damages are not restricted to out of pocket losses of money or lost time. Instead, compensatory damages may include mental and physical aspects of injury, tangible and intangible.")

Thus, damages for pain and suffering are properly categorized as pecuniary damages, and Vaughn's claims for damages for past and future pain and suffering are not subject to summary judgment dismissal.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that ACBL's *Motion for Partial Summary Judgment on Maintenance and Cure* **(Rec. Doc. 34)** is **DENIED**.

**IT IS FURTHER ORDERED** that ACBL's *Motion for Partial Summary Judgment on Non-Pecuniary Damages* **(Rec. Doc. 35)** is **DENIED**.

New Orleans, Louisiana, this 11th day of May, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE