# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMAL VAUGHN | * | CIVIL ACTION NO: 18-07735 |
| | * | |
| VERSUS | * | SECTION: "J"(2) |
| | * | |
| AMERICAN COMMERCIAL BARGE LINE, LLC | * | JUDGE: CARL J. BARBIER |
| | * | |
| | * | MAGISTRATE: |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

***********************************************************************

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

MAY IT PLEASE THE COURT:

### PROPOSED FINDINGS OF FACT

1.

Pursuant to the joint pre-trial order entered into by all parties, the following are uncontested material facts and the court so finds:

A. American Commercial Barge Line, LLC (hereinafter ACBL) owns and operates the M/V SAFETY EXPLORER, a vessel in navigation.

B. Plaintiff was a member of the crew of the M/V SAFETY EXPLORER.

C. ACBL employed the crew aboard the M/V SAFETY EXPLORER.

D. Plaintiff was a Jones Act seaman.

E. The allision of January 19, 2018 was caused by the negligence of Capt. Ian Beckman, captain of the M/V SAFETY EXPLORER and employee of ACBL.

F. ACBL paid Vaughn maintenance from January 19, 2018 through trial, at a rate of $30 per day.

G. ACBL paid $149,813.56 in medical expenses on behalf of Plaintiff.

H. Plaintiff has reached maximum medical improvement for his right shoulder injury.

I. Plaintiff has reached maximum medical improvement for his cervical spine injury.

2.

On January 18, 2018, the M/V SAFETY EXPLORER departed ACBL's Tiger Fleet (Mile Marker 237) near Baton Rouge, Louisiana at approximately 5:00 a.m.

3.

The M/V SAFETY EXPLORER is a 70-foot harbor tug and, at the time, was manned by a two-man crew: Captain Ian Beckman and deckhand/plaintiff, Jamal Vaughn. The vessel was traveling "light boat", without barges, and was headed to ACBL's Harahan Fleet for repair.

4.

As the vessel approached Mile Marker 125, the vessel struck the bow of a second vessel, the M/T R.S. TARA that was moored at the Valero Dock. The exact time of the allision is unknown. Vaughn testified that he thought it occurred around 3:45 a.m. on January 19, 2018 and the Coast Guard report indicates that it occurred at 4:30 a.m. on the 19th.

5.

At the time of the allision, plaintiff, Vaughn was in the galley. He does not remember what he was doing immediately before the allision but does remember after the allision that he was lying across a table in the galley with a freezer door across his leg. Photographs of the interior of the M/V SAFETY EXPLORER showed substantial disarray throughout the interior including a freezer door which came off its hinges, a refrigerator dislodged from its location, a washer and dryer also moved about with various debris spread throughout the galley. Additionally, a toilet had been knocked off its base. The Coast Guard report indicates damage to the M/V SAFETY EXPLORER of approximately $100,000 and damage to the R.S. TARA of approximately $20,000.

6.

Vaughn testified that he believes he lost consciousness as a result of the impact and that moments after the impact he vomited. He reported to the Coast Guard that he had sustained a head injury and a sore back, shoulder and neck.

7.

On January 19, 2018, on the date of the allision, Vaughn was taken by ACBL to Pelican State Outpatient Center for injuries. A CT scan of his head was ordered to rule out any intracranial injury. The CT was performed later that day on the 19th and no intracranial hemorrhage was detected.

8.

On January 20, 2018, Vaughn went to Baton Rouge General Medical Center emergency room complaining of neck pain, back pain and right shoulder pain. A CT of the cervical spine was performed and Vaughn was sent home with prescription medication and told to follow up with his primary care physician.

9.

Later that same day, January 20th, Vaughn returned to Pelican State Outpatient Center with complaints of neck stiffness and soreness and pain on attempting to abduct the right shoulder. An MRI of the right shoulder was ordered.

10.

On January 23rd, Vaughn had an MRI of the right shoulder showing a partial tear/tendinosis in the anterior fibers of the supraspinatus tendon. The doctors at Pelican State Outpatient Center referred Vaughn to an orthopaedist for further evaluation and treatment of his right shoulder and neck. He was discharged from the clinic.

11.

On January 31, 2018, Vaughn began seeing Dr. Gregor Hoffman, an orthopaedic surgeon who specializes in shoulder injuries. Dr. Hoffman ordered six months of physical therapy and also injected Vaughn's painful right shoulder.

12.

The physical therapy gave no relief so Dr. Hoffman performed a right shoulder arthroscopic rotator cuff repair on May 28, 2018 and thereafter ordered followup physical therapy. After more than 50 visits for physical therapy with no significant relief, Dr. Hoffman performed a second right arthroscopic shoulder surgery with AC joint resection on June 14, 2019. This was followed by multiple physical therapy visits thereafter. Vaughn treated for 23 months and was released by Dr. Hoffman for his shoulder injury on December 2, 2019, after 2 right shoulder surgeries and a total of 96 physical therapy visits..

13.

With ongoing complaints of both his neck and back, Dr. Hoffman referred Vaughn to Dr. Andrew Todd, an orthopaedic surgeon specializing in back and neck injuries who first saw Vaughn on October 18, 2018. Dr. Todd identified the cervical spine as the most problematic and concentrated treatment in that area. Vaughn did however continue with low back complaints.

14.

Vaughn continued to treat with Dr. Todd, had MRI's of his cervical and lumbar spine, epidural steroid injections and medical branch blocks, discogram and rhizotomy. These treatments provided only temporary and mild relief so on March 25, 2021, Dr. Todd performed surgery that removed and replaced discs at C4-5 and C5-6. Dr. Todd ordered vocational rehab for Vaughn realizing that he would not be returning to his previous work as a deckhand on the river.

15.

Following the cervical surgery, Dr. Todd continued treating Vaughn for his low back problems. Vaughn received two epidural steroid injections at L5. Dr. Todd prescribed pain medication, muscle relaxers and a repeat epidural steroid injection.

16.

Vaughn continued with major issues with his lower back throughout 2022 and into 2023. Dr. Todd referred him to his partner, Dr. Jonathan Finney, on March 14, 2023. Vaughn saw Dr. Finney and indicated to Dr. Finney that he wished to avoid low back surgery at all costs. Dr. Finney prescribed medications and indicated that Vaughn could continue with the transforaminal epidural steroid injections, which had given him adequate relief over a period of time and that these injections could continue on a yearly basis for the next ten years, receiving 3-4 injections per year. Vaughn's last injection was on May 4, 2023 by Dr. Finney and is scheduled to return to see Dr. Finney on June 6, 2023.

17.

Dr. Todd has opined that Vaughn has reached maximum medical improvement in regards to his cervical spine and <u>non-surgical maximum medical improvement</u> in regard to his lumbar spine. The lumbar spine still requires ongoing medical treatment in the form of injections. Vaughn is scheduled to see Dr. Todd on August 7, 2023.

18.

Aaron Wolfson, an expert in life care planning, testified that he anticipated Vaughn's future medical expenses, including three epidural steroid injections per year for the next ten years, at $453,217. Wolfson further testified in his capacity as a vocational rehab expert that he felt that Vaughn could return to some form of gainful activity earning starting at $17,000 per year.

19.

This Court finds that Vaughn isn't able to return to his prior occupation as a deckhand working on the river. As such, he has suffered significant past lost wages and will continue to suffer impairment of earning capacity into the future. Vaughn's W-2's reflects that in 2016 he earned $42,312 while working for the defendant, ACBL Transportation Services, LLC. In 2017, working for the defendant, Vaughn earned $56,328. The Court notes that this represents a significant increase in his earnings over the two years that he worked for the defendant. The Court finds that Vaughn has suffered a significant past loss of wages and will suffer a significant impairment of his earning capacity into the future.

20.

There remains outstanding and unpaid $44,239.19 in unpaid cure benefits. The evidence shows that demand has been made for payment of these bills since October 10, 2018, and as of June 5, 2023, defendants still have not paid these outstanding cure benefits.

21.

Defendant, ACBL, has offered no justifiable excuses for non-payment of these bills and therefore the Court finds that they had been arbitrary and capricious and without just cause in failing to pay these bills.

CONCLUSIONS OF LAW

1.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1333, which provides original jurisdiction over admiralty or maritime claims, and the Jones Act, 46 U.S.C. 30104. Venue is proper because the defendant is subject to the personal jurisdiction of this Court.

2.

The defendant, American Commercial Barge Line, LLC, has stipulated that the allision on January 19, 2018 was caused by the negligence of Captain Ian Beckman, captain of the M/V SAFETY EXPLORER and an employee of ACBL. Defendant has further stipulated that the plaintiff was a Jones Act seaman and therefore negligence under the Jones Act has been stipulated.

3.

The remaining issues to be determined by this Court are whether the negligence of the defendant, ACBL, caused injuries to Vaughn, the extent of any such injuries and, whether ACBL was arbitrary in the handling of Vaughn's cure payments thereby entitling Vaughn to punative damages and attorney's fees.

4.

When an employer's negligence and/or breach of duty plays a role, however slight, in causing the seaman injury, the employer is liable for those injuries. Landry v. Oceanic Contractors, Inc., 731 F.2d 299, 302 (5th Cir. 1984). The causation burden of proof is "feather weight". Gavagan v. United States, 955 F.2d 1016, 1019 (5th Cir. 1992).

5.

Vaughn was an able bodied and competent deckhand for ACBL for the two years he worked for them prior to the incident in question. There is no evidence of any significant prior physical inability to perform his duties nor does the medical evidence reveal any prior injuries, treatment or physical disability bearing on his current injuries. Since the incident, Vaughn, has consistently complained of right shoulder pain, cervical pain and lumbar pain, which did not exist prior to the incident.

6.

All of Vaughn's treating physicians, Dr. Hoffman, Dr. Todd and Dr. Finney, relate the symptoms in the right shoulder, cervical spine and lumbar spine to the January 19, 2018 accident.

7.

Under the Jones Act and general maritime law, an injured seaman is entitled to recover for past lost wages, future loss of earning capacity, unpaid medical expenses, and future medical expenses as well as pain and suffering resulting from an injury caused by the negligence of his employer. Nichols v. Weeks Marine, Inc., 513 F Supp. 2d 627, 636 (E.D. La. 2007). Vaughn was 22 years old at the time of his injury in 2018 and in the full year prior thereto with the defendant he earned $56,328. As is evident, Vaughn showed a significant increase in his wages over the two years prior before his injury. Additionally, Vaughn, as a younger individual, as evidenced by the testimony of both Shael Wolfson, expert economist, and Aaron Wolfson, expert in vocational rehabilitation, was likely to increase those earnings in the years subsequent to the accident had he not been injured. Considering Vaughn's age and his past earnings history, it would be unjust to assume that Vaughn would not have enjoyed any earnings increase during the approximately five years since the accident. Vaughn is an impressive young man with a decided career path. Plaintiff's economist, using a rather modest increase in wages over those five years, estimated Vaughn's past lost earnings after taxes at $277,459. Additionally, he sustained past loss of fringe benefits in the amount of $57,725. Vaughn's future lost earnings, after discounting to present value, is $1,551,129, after credit for $15,080 earnings per year assuming he remains in the work force until age 67. The credible evidence is that Vaughn will return to work in some light duty job when his medical condition is resolved.

8.

The credible medical evidence is that Vaughn will require future medical in the nature of three to four epidural steroid injections for the next ten years and other follow up treatment for his neck and low back injuries and yearly visits and testing with Dr. Todd. Plaintiff's expert, life care planner, Aaron Wolfson, testified that his future medical expenses would amount to $453,217. Past unpaid medical expenses are $44,239.19. The Court awards past and future medical expenses in accordance with the above figures.

9.

Plaintiff suffered an injury to his right shoulder which required two shoulder surgeries, injury to his cervical spine which required a two-level disc replacement and an injury to his lumbar spine which requires ongoing treatment in the nature of epidural steroid injections three to four times a year with the possibility of future lumbar surgery if the conservative treatment and injections is unsuccessful. During his recovery from the shoulder, neck and back injuries he has attended almost 100 physical therapy sessions. The Court finds that he will have permanent disability and restrictions. The Court finds that plaintiff, Vaughn, is entitled to $350,000 in past pain and suffering and $700,000 in future pain and suffering.

10.

Defendant has paid maintenance and cure benefits through the date of trial with the exception of cure benefits, past medical expenses, in the amount of $44,239.19. The evidence shows that Vaughn through undersigned counsel, on numerous occasions requested payment of these past cure benefits, some since 2018, and as of the date of trial defendant has still not made payment. Even if defendant was to make payment on the eve of trial, such would not excuse the unjustified delay. Additionally, defendant has not provided adequate explanation for the failure to make these payments. Although defendant attempts to excuse their non-payment of early ESI injections because

they were palliative in nature, the injections were both palliative and also diagnostic. The Court further finds that defendant paid for 3 injections subsequent to the ones which they now contend were palliative. Therefore the Court finds that the defendant was arbitrary and capricious in denying payment of these cure benefits and therefore an award for plaintiff's attorney's fees in the amount of $75,000 and punitive damages in the amount of $150,000 for this arbitrary failure to make required payment. <u>Weeks Marine v. Watson</u>, 190 F. Supp. 3d 588 (E.D. LA 2016) Barbier, J.

11.

The Court summarizes the damages sustained by plaintiff as follows:

| | |
|---|---|
| PAST UNPAID CURE EXPENSES | $ 44,239.19 |
| PAST LOST WAGES | $ 227,459.00 |
| PAST FRINGE LOSS | $ 57,725.00 |
| FUTURE LOST WAGES (w/credit for minimum wage of $15,080) | $ 1,334,729.00 |
| FUTURE FRINGE BENEFITS | $ 403,066.00 |
| FUTURE MEDICAL COSTS | $ 453,217.00 |
| PAST PAIN AND SUFFERING | $ 350,000.00 |
| FUTURE PAIN AND SUFFERING | $ 700,000.00 |
| LOSS OF ENJOYMENT OF LIFE | $ 200,000.00 |
| PUNITIVE DAMAGES | $ 150,000.00 |
| ATTORNEY'S FEES | $ 75,000.00 |
| **TOTAL**............................ | **$ 3,995,435.19** |

12.

Vaughn is entitled to pre-judgment interest at a rate of 4% per annum from the date of injury until paid on award for past damages, including past wage loss, unpaid medical bills, past pain and suffering. Interest at the same rate is due on the remainder of the damages awarded for the date of judgment until paid.

Respectfully Submitted:

**JIM S. HALL & ASSOCIATES, LLC**

   /s/   Jim S. Hall
**JIM S. HALL (#21644)**
**MATTHEW B. MORELAND (#24567)**
800 N. Causeway Blvd., Suite 100
Metairie, LA 70001
Telephone: (504) 832-3000
Facsimile: (504) 832-1799

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on the 5th day of June, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

   /s/Jim S. Hall
   **JIM S. H ALL**