UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMAL VAUGHN | CIVIL ACTION |
| VERSUS | NO. 18-7735 |
| AMERICAN COMMERCIAL BARGE LINE, LLC | SECTION: "J"(2) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for bench trial on June 12, 2023. Following the conclusion of the trial, the Court took the matter under advisement. After consideration of the pleadings, trial testimony and exhibits, and argument of counsel, the Court issues the following Findings of Fact and Conclusions of Law, pursuant to Fed. R. Civ. P. Rule 52(a).

1.

This Court has jurisdiction over this matter as an admiralty or maritime claim under 28 U.S.C. 1333, and the Jones Act, 46 U.S.C. 30104. Venue is proper because the defendant is subject to personal jurisdiction in this district.

2.

Jamal Vaughn was employed as a deckhand on the M/V SAFETY EXPLORER, a vessel owned and operated by AMERICAN COMMERCIAL BARGE LINE, LLC ("ACBL"). On January 19, 2018, the M/V SAFETY EXPLORER allided with another vessel while navigating on the Mississippi River. The parties have stipulated that the allision was caused solely by the negligence of the vessel captain. During the allision,

Vaughn alleges that he was in the galley and was violently thrown around, causing him to sustain injuries to his head, neck, back and shoulder. The only issues at trial related to damages.

3.

Immediately following the accident, Vaughn called in a report to the United States Coast Guard, advising of injuries to his head, neck, back and shoulder. On the same day, Vaughn was taken by ACBL to Pelican State Outpatient Center for injuries. A CT scan of his head was ordered to rule out any intracranial injury. The CT was performed later that day and no intracranial hemorrhage was detected.

4.

Two days later, Vaughn went to Baton Rouge General Medical Center emergency room complaining of neck pain, back pain and right shoulder pain. A CT of the cervical spine was performed, and Vaughn was sent home with prescription medication and told to follow up with his primary care physician.

5.

Later that same day, January 20th, Vaughn returned to Pelican State Outpatient Center with complaints of neck stiffness and soreness and pain on attempting to abduct the right shoulder. An MRI of the right shoulder was ordered.

6.

On January 23rd, Vaughn had an MRI of the right shoulder showing a partial

tear/tendinosis in the anterior fibers of the supraspinatus tendon. The doctors at Pelican State Outpatient Center referred Vaughn to an orthopedist for further evaluation and treatment of his right shoulder and neck.

7.

On January 31, 2018, Vaughn began seeing Dr. Gregor Hoffman, an orthopedic surgeon who specializes in shoulder injuries. Dr. Hoffman ordered six months of physical therapy and also injected Vaughn's painful right shoulder.

8.

The physical therapy gave no relief, so Dr. Hoffman performed a right shoulder arthroscopic rotator cuff repair on May 28, 2018, and thereafter ordered follow-up physical therapy. After more than 50 visits for physical therapy with no significant relief, Dr. Hoffman performed a second right arthroscopic shoulder surgery with AC joint resection on June 14, 2019. This was followed by multiple physical therapy visits thereafter. Vaughn treated for 23 months and was released by Dr. Hoffman for his shoulder injury on December 2, 2019, after two right shoulder surgeries and a total of 96 physical therapy visits.

9.

With ongoing complaints of both his neck and back, Dr. Hoffman referred Vaughn to Dr. Andrew Todd, an orthopedic surgeon specializing in back and neck injuries who first saw Vaughn on October 18, 2018. Dr. Todd identified the cervical

spine as the most problematic and concentrated treatment in that area. Vaughn did however continue with low back complaints.

10.

Vaughn continued to treat with Dr. Todd, had MRIs of his cervical and lumbar spine, epidural steroid injections and medical branch blocks, discogram and rhizotomy. These treatments provided only temporary relief so on March 25, 2021, Dr. Todd performed cervical surgery to remove and replace discs at C4-5 and C5-6. Dr. Todd believed that Vaughn would not be capable of returning to work on boats or offshore, so he ordered vocational rehabilitation.

11.

Once he had dealt with the cervical injury, Dr. Todd turned his attention to Vaughn's low back complaints. Vaughn received two epidural steroid injections at L5. Dr. Todd prescribed pain medication, muscle relaxers and a repeat epidural steroid injection.

12.

Vaughn continued with lower back complaints, but Dr. Todd did not believe he was a surgical candidate because of his young age. Dr. Todd referred him to Dr. Jonathan Finney, who is board certified in both Physical Medicine and Rehabilitation and Pain Management. Vaughn first saw Dr. Finney in March 2023 and indicated that he wished to avoid low back surgery. Dr. Finney prescribed

medications and indicated that Vaughn could continue with the transforaminal epidural steroid injections, which had given him good but temporary pain relief over a period of time. Dr. Finney thought these injections could continue with two to four injections per year. Vaughn's last injection was on May 4, 2023. At trial, Vaughn testified that he typically gets about 80% relief of his back pain following an injection. The pain usually returns after three or four months, which requires him to return for another injection.

13.

Vaughn has reached maximum medical improvement for his shoulder and cervical spine injuries. He has also reached non-surgical maximum medical improvement in regard to his lumbar spine. He will still require palliative treatment for his lumbar spine in the form of periodic epidural steroid injections. The Court finds that the need for these injections will likely taper off gradually over the next few years.

14.

Mr. Vaughn impressed the Court as a credible witness. He was 22 years old at the time of the accident and 27 years old at the time of trial. He is a high school graduate. He worked several years on several marine vessels and from all indications was a good employee. Although the defendant raised questions about the relationship between his cervical and lumbar injuries to the allision, the Court finds credible Mr.

Vaughn's testimony that all of his injuries were either caused or aggravated when he was violently thrown onto the floor of the galley as a result of the allision between the two vessels on January 19, 2018. The Court also finds credible the trial testimony of the three physicians who treated Mr. Vaughn for his injuries, each of whom testified that his injuries were causally related to the allision.

15.

The parties stipulated that ACBL has paid maintenance through the time of trial. At the conclusion of the trial testimony, the parties resolved the issues related to unpaid medical expenses. The only remaining unpaid expenses are $8,052, which represents the cost of the injections prescribed by Dr. Finney. The defendant argues that these injections are for only palliative treatment, and thus not owed under its maintenance and cure obligation. While the Court agrees with this position, the Court nonetheless finds that Mr. Vaughn is entitled to recover these past medical costs under the Jones Act.

16.

The parties stipulated to their respective reports from economic and vocational experts. The Court finds that Vaughn will not be able to return to his prior occupation as a deckhand working on the river or any similar heavy labor work. Instead, the Court finds that Mr. Vaughn is capable of returning to various types of light to medium employment, which of course means that he will suffer a diminution of his

future earnings and earning capacity. While working for the defendant, ACBL for the full year of 2017, Vaughn earned gross wages of $56,328.

17.

Under the Jones Act and general maritime law, an injured seaman is entitled to recover for past lost wages, future loss of earning capacity, unpaid medical expenses, and future medical expenses as well as pain and suffering resulting from an injury caused by the negligence of his employer. *Nichols v. Weeks Marine, Inc.*, 513 F. Supp. 2d 627, 636 (E.D. La. 2007). Vaughn was 22 years old at the time of his injury in 2018 and in the full year prior thereto with the defendant he earned $56,328. Plaintiff's economist estimated Vaughn's loss of earnings from date of accident until trial as $221,246 (after taxes), which the Court finds reasonable. Vaughn's loss of future earnings and earning capacity are more difficult to assess precisely. The two economists calculated widely disparate estimates. The Court finds that Mr. Vaughn will be able to engage in light to medium employment, which will cause him to suffer an approximate 50% loss of future earning capacity. Extrapolating from the calculations by competing economists, the Court finds that Mr. Vaughn's loss of future earnings is $750,000 (after taxes).

18.

As stated above, Mr. Vaughn will likely undergo a series of epidural steroid injections for the next several years, gradually tapering off. The Court estimates that

$150,000 will reasonably compensate plaintiff for such future medical expenses.

19.

Plaintiff suffered a significant injury to his right shoulder which required two separate surgeries and months of physical therapy. He also sustained injury to his cervical spine which required a two-level disc replacement surgery. The injury to his lumbar spine required several years of conservative treatment in the nature of physical therapy, medication, and a number of epidural steroid injections. He has attended almost 100 physical therapy sessions. He is permanently disabled from returning to his former employment on marine vessels. He is likewise restricted from any heavy manual labor jobs. The Court finds that Mr. Vaughn is entitled to $350,000 in past physical and mental pain and suffering and $400,000 for future pain, suffering and permanent disability.

20.

In summary, the Court awards damages to plaintiff as follows:

| | | |
|---|---|---|
| PAST UNPAID MEDICAL EXPENSES | $ | 8,052.00 |
| PAST LOST WAGES | $ | 221,246.00 |
| FUTURE LOST WAGES | $ | 750,000.00 |
| FUTURE MEDICAL EXPENSES | $ | 150,000.00 |
| PAST PAIN AND SUFFERING | $ | 350,000.00 |
| FUTURE PAIN, SUFFERING, AND DISABILITY | $ | 400,000.00 |
| | **TOTAL........................$** | **1,879,298.00** |

21.

Vaughn is entitled to pre-judgment interest at a rate of 5% per annum from the date of injury until paid on awards for past damages, including past wage loss, unpaid medical bills, past pain and suffering. Interest at the same rate is due on the remainder of the damages awarded from the date of judgment until paid. All costs are taxed to Defendant.

New Orleans, Louisiana, this 22nd day of June, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE